UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

───────────────────────────────────────

MICHAEL P. LAWLER

                      Plaintiff,

      v.

ANDREW M. SAUL,[1] Commissioner of
Social Security,

                      Defendant.

**DECISION
and
ORDER**

**18-CV-01072-LGF
(consent)**

───────────────────────────────────────

APPEARANCES:        LAW OFFICES OF KENNETH R. HILLER
                                Attorneys for Plaintiff
                                TIMOTHY HILLER, of Counsel
                                6000 Bailey Avenue
                                Suite 1A
                                Amherst, New York 14226

                                JAMES P. KENNEDY, JR.
                                UNITED STATES ATTORNEY
                                Attorney for Defendant
                                Federal Centre
                                138 Delaware Avenue
                                Buffalo, New York 14202;

                                DAVID L. BROWN, and
                                ALEXANDER BROCHE, of Counsel
                                Social Security Administration
                                Office of the General Counsel
                                26 Federal Plaza
                                Room 3904
                                New York, New York 10278, and

---

[1] Andrew M. Saul became Acting Commissioner of the Social Security Administration on June 17, 2019, and, pursuant to Rule 25(d), is substituted as Defendant in this case. No further action is required to continue this suit by reason of sentence one of 42 U.S.C. § 405(g).

AVI DINESH GANDHI, of Counsel
Social Security Administration
Office of General Counsel
61 Forsyth Street, S.W.
Suite 20T45
Atlanta, Georgia 30303

**JURISDICTION**

On October 7, 2019, this matter was reassigned to the undersigned before whom the parties to this action consented pursuant to 28 U.S.C. § 636(c) to proceed in accordance with this court's June 29, 2018 Standing Order (Dkt. No. 13). The matter is presently before the court on motions for judgment on the pleadings filed by Plaintiff on April 24, 2019 (Dkt. No. 8), and by Defendant on June 20, 2019 (Dkt. No. 11).

**BACKGROUND**

Plaintiff Michael Lawler ("Plaintiff"), brings this action under Title II of the Social Security Act ("the Act"), 42 U.S.C. §§ 405(g), seeking judicial review of the Commissioner of Social Security's final decision denying Plaintiff's application filed with the Social Security Administration ("SSA") on November 5, 2015, for Social Security Disability Insurance ("SSDI") ("disability benefits"). Plaintiff alleges that he became disabled on February 1, 2015, from Parkinson's disease with stiffness of Plaintiff's extremities and resulting anxiety that exacerbates his tremors. (R.[2] 317). Plaintiff's application initially was denied on March 4, 2016 (R. 83), and at Plaintiff's timely

---

[2] References to "R" are to the page of the Administrative Record electronically filed by Defendant on February 22, 2019 (Dkt. No. 5).

request, on March 6, 2018, a hearing was held in Buffalo, New York by Administrative Law Judge Stephen Cordovani ("Judge Cordovani" or "the ALJ")   (R. 32-82), where Plaintiff, represented by Lekha Chandra, Esq. ("Ms. Chandra") appeared and testified. (R. 5-45).  Vocational expert David Jones ("the VE" or "VE Jones"), also appeared and testified.  (R. 85-92).  On April 18, 2018, the ALJ issued a decision denying Plaintiff's claim (R. 15-27) ("the ALJ's decision"), which Plaintiff timely appealed to the Appeals Council.  (R. 4).  On August 7, 2018, the Appeals Council issued a decision denying Plaintiff's request for review, rendering the ALJ's decision the Commissioner's final decision.  (R. 1-4).

On April 24, 2019, Plaintiff moved for judgment on the pleadings (Dkt. No. 8) ("Plaintiff's Motion"), attaching the Memorandum of Law in Support of Plaintiff's Motion for Judgment on the Pleadings (Dkt. No. 8-1) ("Plaintiff's Memorandum").  On June 20, 2019, Defendant moved for judgment on the pleadings (Dkt. No. 11) ("Defendant's Motion"), attaching the Commissioner's Brief in Support of the Defendant's Motion for Judgment on the Pleadings and in Response to Plaintiff's Brief Pursuant to Local Standing Order on Social Security Cases (Dkt. No. 11-1) ("Defendant's Memorandum"). Plaintiff filed on July 11, 2019, Plaintiff's Response to the Commissioner's Brief in Support and in Further Support for Plaintiff's Motion for Judgment on the Pleadings (Dkt. No. 12) ("Plaintiff's Reply").  Oral argument was deemed unnecessary.

Based on the following, Plaintiff's Motion is DENIED; Defendant's Motion is GRANTED.

**FACTS**

Plaintiff was first diagnosed with Parkinson's disease on May 11, 2011, by Jesus Santiano, M.D. ("Dr. Santiano"), an emergency medical physician at Mercy Hospital in Buffalo, New York, after seeking treatment for left-sided weakness, a shuffling gait and resting tremor. (R. 272-73).

Relevant to the period of disability in this case, on January 20, 2015, Nurse Practitioner Jill T. Crouthamel ("N.P. Crouthamel"), with Dent Neurologic Institute ("Dent"), completed a follow-up examination for Plaintiff's Parkinson's disease where Plaintiff reported increased anxiety, left-foot dragging and stiffness, left hand tremor, abnormal gait, and fatigue. (R. 372). N.P. Crouthamel advised Plaintiff that he would not qualify for disability benefits as he displayed only a slight resting tremor in his left hand with minimal shuffling or stooped gait. (R. 372). On April 14, 2015, N.P. Crouthamel noted that Plaintiff reported that anxiety increased his hand tremors and that Plaintiff's other symptoms were unchanged since Plaintiff's last visit. (R. 368). On July 14, 2015, N.P. Crouthamel noted that Plaintiff reported more body stiffness when performing heavy work and sitting for extended periods of time, and a recent diagnosis of a deep-vein thrombosis (blood clot) in his left lower extremity. N.P. Crouthamel noted that Plaintiff exhibited no increased symptoms of his Parkinson's disease. (R. 366-67).

On October 14, 2015, Emmanuel Packianathan, M.D. ("Dr. Packianathan"), a physician with WNY Medical, P.C., completed a follow-up physical examination on Plaintiff who reported back pain after spraining his back while riding a motorcycle. (R. 345-59).

4

On October 13, 2015 and December 1, 2015, N.P. Crouthamel noted that Plaintiff exhibited no new Parkinsonian symptoms and advised Plaintiff to continue exercising. (R. 361, 364).

On January 18, 2016, Christine Ransom, Ph.D., ("Dr. Ransom"), completed a consultative mental status examination on Plaintiff and evaluated Plaintiff with no limitations to understanding simple instructions, performing simple tasks independently, maintaining concentration and attention and a simple schedule, performing complex tasks, relating adequately with others, and dealing with stress. (R. 450).

On February 12, 2016, A. Dipeolu, Ph.D., ("Dr. Dipeolu"), reviewed Plaintiff's medical records and completed an initial disability determination on behalf of the Social Security Administration, finding that Plaintiff was able to occasionally lift and carry up to 20 pounds, frequently lift up to 10 pounds, sit six hours in an eight-hour workday, occasionally climb ladders, ramps, stairs, ropes, crouch, crawl, and kneel, and was not disabled. (R. 90-91).

On June 28, 2016, Ana N. Cervantes, M.D. ("Dr. Cervantes"), a psychiatrist with Dent, completed a psychiatric examination on Plaintiff and noted that Plaintiff reported extreme fatigue, and trouble concentrating when reading and watching television. Dr. Cervantes diagnosed Plaintiff with a major depressive disorder, recurrent, episodic in nature, with anxiety. (R. 524-25). On July 18, 2016, Dr. Cervantes completed a follow-up examination for Plaintiff's depressive disorder and noted that Plaintiff reported the Wellbutrin medication helped his depressive symptoms, was more active and motivated, went fishing with a friend and was planning a party at his home, and evaluated Plaintiff with no defects in memory, concentration, insight or judgment. (R. 521).

On July 26, 2016, N.P. Crouthamel noted that Plaintiff exhibited no reduced arm swing and stable symptoms. (R. 517).

On September 12, 2016, Dr. Cervantes noted that Plaintiff's Parkinson's disease remained stable. (R. 513-14).

On October 25, 2016, N.P. Crouthamel completed a follow-up examination on Plaintiff and noted no increase in Plaintiff's Parkinson's disease. (R. 511-13).

On November 14, 2016 and January 10, 2017, Dr. Cervantes provided psychotherapy to Plaintiff and noted that Plaintiff reported a "pretty good" mood. (R. 505-08).

On February 21, 2017, N.P. Crouthamel noted that Plaintiff exhibited mild tremor in his left upper extremity with decreased arm swing. (R. 503).

On March 3, 2017, Dr. Cervantes noted that Plaintiff reported fishing with a friend on six occasions since his last visit and increased anxiety about Plaintiff's health. (R. 501).

On May 25, 2017, Plaintiff reported to Mercy Hospital after cutting his hand while using a table saw. (R. 1000-01).

On June 6, 2017, Physician Assistant Jonathan Falletta ("P.A. Falletta"), completed a follow-up examination on Plaintiff and noted that Plaintiff's mood was "okay" with diminished concentration and fair insight and judgment. (R. 496).

On June 22, 2017, Xiuli Li, M.D. ("Dr. Li"), a neurologist with Dent, competed a neurological re-evaluation on Plaintiff and noted that Plaintiff reported increased tiredness when sitting, increase gait shuffle with freezing up, and evaluated Plaintiff with a shuffling gait. (R. 494-95).

On September 6, 2017, P.A. Falletta noted that Plaintiff exhibited severe depression and anxiety, decreased concentration and fair insight and judgment likely related to the death of Plaintiff's father, and referred Plaintiff for grief counseling.  (R. 492).

On September 27, 2017, Dr. Li noted that Plaintiff exhibited slight hand tremor, with no gait shuffling, and reported doing well.  (R. 488-89).

On January 18, 2018, Dr. Li completed correspondence wherein Dr. Li noted that Plaintiff's abnormal gait and occasional hand tremors would expose Plaintiff and others to increased danger in the workplace and opined that Plaintiff was therefore disabled. (R. 1006).

## DISCUSSION

A district court may set aside the Commissioner's determination that a claimant is not disabled if the factual findings are not supported by substantial evidence, or the decision is based on legal error.  See 42 U.S.C. 405(g); *Green-Younger v. Barnhart*, 335 F.3d 99, 105-06 (2d Cir. 2003).  "Substantial evidence" means 'such relevant evidence as a reasonable mind might accept as adequate.'" *Shaw v. Chater*, 221 F.3d 126, 131 (2d Cir. 2000).

### A. Standard and Scope of Judicial Review

The standard of review for courts reviewing administrative findings regarding disability benefits, 42 U.S.C. §§ 401-34 and 1381-85, is whether the administrative law judge's findings are supported by substantial evidence.  *Richardson v. Perales*, 402 U.S. 389, 401 (1971).  Substantial evidence requires enough evidence that a

reasonable person would "accept as adequate to support a conclusion." *Consolidated Edison Co. v. N.L.R.B.*, 305 U.S. 197, 229 (1938). When evaluating a claim, the Commissioner must consider "objective medical facts, diagnoses or medical opinions based on these facts, subjective evidence of pain or disability (testified to by the claimant and others), and . . . educational background, age and work experience." *Dumas v. Schweiker*, 712 F.2d 1545, 1550 (2d Cir. 1983) (quoting *Miles v. Harris*, 645 F.2d 122, 124 (2d Cir. 1981)). If the opinion of the treating physician is supported by medically acceptable techniques and results from frequent examinations, and the opinion supports the administrative record, the treating physician's opinion will be given controlling weight. *Schisler v. Sullivan*, 3 F.3d 563, 567 (2d Cir. 1993); 20 C.F.R. § 404.1527(d); 20 C.F.R. § 416.927(d). The Commissioner's final determination will be affirmed, absent legal error, if it is supported by substantial evidence. *Dumas,* 712 F.2d at 1550; 42 U.S.C. §§ 405(g) and 1383(c)(3). "Congress has instructed . . . that the factual findings of the Secretary,[3] if supported by substantial evidence, shall be conclusive." *Rutherford v. Schweiker*, 685 F.2d 60, 62 (2d Cir. 1982).

The applicable regulations set forth a five-step analysis the Commissioner must follow in determining eligibility for disability insurance benefits. 20 C.F.R. §§ 404.1520 and 416.920. *See Bapp v. Bowen*, 802 F.2d 601, 604 (2d Cir. 1986); *Berry v. Schweiker*, 675 F.2d 464 (2d Cir. 1982). The first step is to determine whether the applicant is engaged in substantial gainful activity during the period for which benefits

---

[3] Pursuant to the Social Security Independence and Program Improvements Act of 1994, the function of the Secretary of Health and Human Services in Social Security cases was transferred to the Commissioner of Social Security, effective March 31, 1995.

are claimed. 20 C.F.R. §§ 404.1520(b) and 416.920(b). If the claimant is engaged in such activity the inquiry ceases and the claimant is not eligible for disability benefits. *Id.* The next step is to determine whether the applicant has a severe impairment which significantly limits the physical or mental ability to do basic work activities as defined in the applicable regulations. 20 C.F.R. §§ 404.1520(c) and 416.920(c). Absent an impairment, the applicant is not eligible for disability benefits. *Id.* Third, if there is an impairment and the impairment, or an equivalent, is listed in Appendix 1 of the regulations and meets the duration requirement, the individual is deemed disabled, regardless of the applicant's age, education or work experience, 20 C.F.R. §§ 404.1520(d) and 416.920(d), as, in such a case, there is a presumption the applicant with such an impairment is unable to perform substantial gainful activity.[4] 42 U.S.C. §§ 423(d)(1)(A) and 1382(c)(a)(3)(A); 20 C.F.R. §§ 404.1520 and 416.920. *See also Cosme v. Bowen*, 1986 WL 12118, at * 2 (S.D.N.Y. 1986); *Clemente v. Bowen*, 646 F.Supp. 1265, 1270 (S.D.N.Y. 1986).

However, as a fourth step, if the impairment or its equivalent is not listed in Appendix 1, the Commissioner must then consider the applicant's "residual functional capacity" and the demands of any past work. 20 C.F.R. §§ 404.1520(e), 416.920(e). If the applicant can still perform work he or she has done in the past, the applicant will be denied disability benefits. *Id.* Finally, if the applicant is unable to perform any past work, the Commissioner will consider the individual's "residual functional capacity," age, education and past work experience in order to determine whether the applicant can

---

[4] The applicant must meet the duration requirement which mandates that the impairment must last or be expected to last for at least a twelve-month period. 20 C.F.R. §§ 404.1509 and 416.909.

9

perform any alternative employment.  20 C.F.R. §§ 404.1520(f), 416.920(f).  *See also Berry,* 675 F.2d at 467 (where impairment(s) are not among those listed, claimant must show that he is without "the residual functional capacity to perform [her] past work").  If the Commissioner finds that the applicant cannot perform any other work, the applicant is considered disabled and eligible for disability benefits.  20 C.F.R. §§ 404.1520(g), 416.920(g).  The applicant bears the burden of proof as to the first four steps, while the Commissioner bears the burden of proof on the final step relating to other employment. *Berry,* 675 F.2d at 467.

In reviewing the administrative finding, the court must follow the five-step analysis and 20 C.F.R. § 416.935(a) ("§ 416.935(a)"), to determine if there was substantial evidence on which the Commissioner based the decision.  20 C.F.R. § 416.935(a); *Richardson,* 402 U.S. at 410.

In the instant case, the ALJ found that Plaintiff had not engaged in substantial gainful activity since Plaintiff's alleged disability onset date of February 1, 2015, has the severe impairments of Parkinson's disease and obesity (R. 18), that Plaintiff's history of deep vein thrombosis ("DVT"), depression and anxiety are not severe impairments, that Plaintiff's Parkinson's and obesity do not singly or in combination meet or medically equal the severity of any listed impairment in Appendix 1 (R. 20), that Plaintiff retains the RFC to perform light work with limitations of occasional climbing of ramps and stairs, balancing, kneeling, crouching, and crawling, no climbing ropes or scaffolds, exposure to unprotected heights, dangerous moving mechanical parts, and off-task less than ten percent of each workday (R. 20), and is able to perform past relevant work as a food chemist (R. 27). In determining Plaintiff's RFC, the ALJ granted great weight to Dr.

10

Dipeolu's February 12, 2016, consultative opinion that Plaintiff was able to perform Plaintiff's past relevant work as a food chemist (R. 26) (referencing R. 91), great weight to the findings of consultative examiner Dr. Ransom (R. 25) (referencing 448-51), and rejected Dr. Li's finding that Plaintiff was unable to work (R. 26) (referencing R. 1006), opining that such finding was inconsistent with Dr. Li's evaluations of Plaintiff and Plaintiff's reported activities of daily living.

The second step of the disability review analysis requires a determination of whether a disability claimant has a severe medically determinable physical or mental impairment that meets the duration requirement in 20 C.F.R. § 404.1509 ("§ 404.1509"), and significantly limits the claimant's ability to do "basic work activities." If no severe impairment is found, the claimant is deemed not disabled and the inquiry ends. 20 C.F.R. § 404.1420(a)(4)(ii). The Act defines "basic work activities" as "abilities and aptitudes necessary to do most jobs," and includes physical functions like walking, standing, sitting, lifting, pushing, pulling, reaching, carrying, or handling; capacities for seeing, hearing, and speaking; understanding, carrying out, and remembering simple instructions; use of judgment; responding appropriately to supervision, co-workers and usual work situations; and dealing with changes in a routine work setting. 20 C.F.R. §§ 404.1521(b) ("§ 404.1521(b)"), 416.921(b). The step two analysis may do nothing more than screen out *de minimus* claims, *Dixon v. Shalala*, 54 F.3d 1019, 1030 (2d Cir. 1995), and a finding of a non-severe impairment should be made only where the medical evidence establishes only a slight abnormality which would have no more than a minimal effect on the claimant's ability to work. *Rosario v. Apfel,* 1999 WL 294727, at

*5 (E.D.N.Y. March 19, 1999) (quoting Social Security Ruling ("SSR") 85-28, 1985 WL 56856).

Plaintiff does not contest the ALJ's findings with regard to the first, and third step of the five-step analysis but argues the ALJ's step-two finding that Plaintiff's depression and anxiety are not severe impairments is erroneous as the ALJ relied on Dr. Dipeolu's February 10, 2016, non-examining opinion which predated the commencement of Plaintiff's psychiatric treatment with Dr. Cervantes and P.A. Falletta on June 28, 2016 (R. 551). Plaintiff's Memorandum at 11-15. Defendant maintains that the ALJ's determination that Plaintiff's depression and anxiety are not severe impairments under step two of the disability review analysis is supported by substantial evidence in the record as Plaintiff's depression and anxiety resulted in only mild limitations to Plaintiff's ability to concentrate, that Plaintiff was consistently evaluated with intact memory and insight, judgment, attention, memory and cognition, and that Plaintiff's Wellbutrin medication improved Plaintiff's mental health symptoms. Defendant's Memorandum at 13-17. Defendant's argument is without merit as substantial evidence supports that Plaintiff's mental impairments of depression and anxiety are sufficient to establish such impairments meet the threshold to be considered severe impairments under step two of the disability review analysis.

In particular, on April 14, 2015, Plaintiff reported that anxiety increased the severity of his right extremity tremors (R. 368). Although Dr. Cervantes evaluated Plaintiff with only "mild depression" on July 18, 2016, on June 6, 2017, P.A. Falletta noted that Plaintiff reported feeling depressed, down and hopeless more than half of the time, poor appetite and sleep, trouble concentrating and increased anxiety, leading P.A.

Falletta to diagnose Plaintiff with moderately severe depression (R. 497-98), evidence that establishes Plaintiff's anxiety and depression are severe impairments under step two. Significantly, no error results from the ALJ's erroneous step two finding, however, as the ALJ included consideration of Plaintiff's mental impairments in subsequent steps of the ALJ's disability determination (R. 21). *See Stanton v. Astrue*, 370 Fed. App'x 231, 233 n.1 (2d Cir. 2010) (no error where ALJ proceeds to include non-severe impairments throughout remaining steps of sequential disability analysis and considered the combination of impairments and the combined effect of "all symptoms" in the ALJ's disability review analysis). Plaintiff's motion on this issue is therefore DENIED.

Plaintiff next argues that the ALJ's residual functional capacity of Plaintiff is without support of substantial evidence as the ALJ's rejection of Dr. Li's findings on Plaintiff's ability to function results in the ALJ's substitution of his own expertise for the opinion of Plaintiff's treating physician Dr. Li. Plaintiff's Memorandum at 15-17. Defendant maintains that the ALJ based Plaintiff's residual functional capacity assessment of Plaintiff is supported by substantial evidence in the record that Plaintiff's Parkinson's disease resulted in minimal limitations to Plaintiff's ability to work, and Plaintiff's reported activities of daily living. Defendant's Memorandum at 17-19. Plaintiff's motion on this issue is without merit.

**Residual functional capacity**

The so-called residual functional capacity or RFC, is an assessment of an individual's ability to do sustained work-related physical and mental activities in a work setting on a regular and continuing basis. A 'regular and continuing basis' means 8

hours a day, for 5 days a week, or an equivalent work schedule." SSR[5] 96-8p; 1996 WL 374184, at *1. In making an RFC assessment, the ALJ must consider objective medical facts, diagnoses, and medical opinions based on those facts, along with the claimant's subjective symptoms of pain and other asserted limitations. 20 C.F.R. §§ 404.1545, 416.945. The "RFC is not the *least* an individual can do despite his or her limitations, but the *most*." SSR 96-8p; 1996 WL 374184, at * 1 (italics in original). "The RFC assessment considers only functional limitations and restrictions that result from an individual's medically determinable impairment or combination of impairments, including the impact of any related symptoms." *Id*. If there is "no allegation of a physical or mental limitation or restriction of a specific functional capacity, and no information in the case record that there is such a limitation or restriction, the adjudicator must consider the individual to have no limitation or restriction with respect to that functional capacity." *Id*. "The RFC assessment must first identify the individual's functional limitations or restrictions and assess his or her work-related abilities on a function-by-function basis . . . . Only after that may the RFC be expressed in terms of the exertional levels of work, sedentary,[6] light, medium, heavy, and very heavy." *Id*. Although the RFC assessment is reserved for the commissioner, the assessment remains a medical determination that must be based on medical evidence of record, such that the ALJ may not substitute her own judgment for competent medical opinion. *Walker v. Astrue*, 2010 WL 2629832, at *

---

[5] "SSR" is the acronym for "Social Security Rulings" which are agency rulings "published under the authority of the Commissioner of Social Security and are binding on all components of the Administration. Such rulings represent precedent final opinions and orders and statements of policy and interpretations that [the SSA] ha[s] adopted." 20 C.F.R. § 402.35(b)(1).
[6] Sedentary work involves lifting no more than 10 pounds at a time or occasionally lifting or carrying articles like docket files, ledgers and small tools.

6 (W.D.N.Y. June 11, 2010) (citing 20 C.F.R. §§ 404.1527(e)(2), and 416.927(e)(2)), *report and recommendation adopted*, 2010 WL 2629821 (W.D.N.Y. June 28, 2010). The Second Circuit has upheld an RFC assessment where the ALJ discounted the claimant's only treating physician's medical source statement without remanding for acquisition of another medical source statement where there was sufficient evidence in the record to permit the ALJ to assess the RFC, including years of treatment notes and evidence of the claimant's social and recreational activities. *See Monroe v. Comm'r of Soc. Sec.*, 676 Fed. Appx. 5, 6-9 (2d Cir. Jan. 18, 2017). Further, "'where the medical evidence shows relatively little physical impairment, an ALJ permissibly can render a common sense judgment about functional capacity even without a physician's assessment. . . .'" *Walker*, 2010 WL 2629832, at * 6 (quoting *Manso-Pizarro v. Secretary of Health and Human Services*, 76 F.3d 15, 17 (1st Cir. 1996)). Moreover, where substantial evidence in the record supports the ALJ's RFC assessment, there is no "gap" in the medical record requiring the ALJ to further develop the record by obtaining an additional medical source statement from one of Plaintiff's treating physicians. *See Pellam v. Astrue*, 508 Fed. Appx. 87, 90 (2d Cir. Jan. 28, 2013) (citing *Rosa v. Callahan*, 168 F.3d 72, 79 n. 5 (2d Cir. 1999) ("where there are no obvious gaps in the administrative record, and where the ALJ already possesses a 'complete medical history,' the ALJ is under no obligation to seek additional information. . . .")).

> Light work, by definition, involves:
>
> lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category if it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls. To be considered capable of performing a full or wide range of light

15

work, you must have the ability to do substantially all of the activities. If someone can do light work, we determine that he or she can also do sedentary work, unless there are additional limiting factors such as loss of fine dexterity or inability to sit for long periods of time.

20 C.F.R. § 404.1567(b).

Here, the ALJ's finding that Plaintiff is able to perform Plaintiff's past relevant light work as a food chemist is supported by substantial evidence in the record. In particular, on January 20, 2015, N.P. Crouthamel evaluated Plaintiff with only slight hand tremor (R. 368), on October 13, 2015, noted that Plaintiff exhibited minimal Parkinsonian features (R. 364), and on December 1, 2015, advised Plaintiff to continue exercising (R. 364). On October 25, 2016, N.P. Crouthamel noted that Plaintiff exhibited no new Parkinson's symptoms (R. 511), and on July 26, 2016, evaluated Plaintiff with no decreased arm swing and stable Parkinsonian symptoms. (R. 517). On October 14, 2015 (R. 345), Plaintiff sought treatment from Dr. Packianathan for back pain after spraining his back while riding a motorcycle. (R. 345). Notably, Plaintiff testified that his activities of daily living include fishing with friends, mowing the lawn, snow-blowing the driveway, gardening, and completing home improvement projects. (R. 499, 505-23). As indicated in the foregoing, Plaintiff's consistent normal physical examinations and activities of daily living support the ALJ's finding that Plaintiff was capable of performing Plaintiff's past relevant work as a food chemist. The ALJ's finding that Plaintiff is not disabled is thus supported by substantial evidence in the record. Plaintiff's motion on this issue is DENIED.

## CONCLUSION

Based on the foregoing, Plaintiff's motion (Doc. No. 8) is DENIED; Defendant's motion (Doc. No. 11) is GRANTED. The Clerk of Court is directed to close the file. SO ORDERED.

/s/ *Leslie G. Foschio*

_____
LESLIE G. FOSCHIO
UNITED STATES MAGISTRATE JUDGE

DATED: January 30, 2020
           Buffalo, New York